So Ordered.

Dated: July 15, 2022



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Greenpoint Tactical Income Fund, LLC, | Case No. 19-29613-gmh |
| GP Rare Earth Trading Account LLC, | Case No. 19-29617-gmh |
| Jointly Administered Debtors. | Chapter 11 (Jointly Administered Under Case No. 19-29613) |

U.S. Securities and Exchange Commission,

    Plaintiff,

v.      Adv. Proc. No. 20-2005-gmh

Greenpoint Tactical Income Fund LLC, and
GP Rare Earth Trading Account LLC,

    Defendants.

**DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STAY PROCEEDINGS**

I

The United States Securities and Exchange Commission commenced this nondischargeability adversary proceeding in January 2020. The SEC alleges that the debtors violated various federal securities laws giving rise to "claims for disgorgement of ill-gotten gains, prejudgment interest, and civil penalties [that] are not dischargeable pursuant to 11 U.S.C. §1141(d)(6)". ECF No. 1, at 6. About a month after the SEC filed this adversary proceeding, it added the debtors as defendants to a securities law action that it had previously commenced against several related entities in the United States District Court for the Western District of Wisconsin. In that action, the SEC seeks a judgment requiring the defendants, including the debtors, "to disgorge all of their ill-gotten gains received as a result of the violations alleged in [the SEC's] Complaint including prejudgment interest" and "imposing" "appropriate civil penalties". *SEC v. Bluepoint Investment Counsel, LLC*, No. 19-CV-809, ECF No. 33, at 105 (W.D. Wis.). The Western District case is scheduled for a trial before a jury on July 25, 2022, to determine liability and, if necessary, a trial to the bench on September 6, 2022, to determine remedies. *SEC v. Bluepoint Investment Counsel, LLC*, No. 19-CV-809, ECF No. 339, at 1 (W.D. Wis. May 25, 2022).

In this adversary proceeding the debtor-defendants responded to the SEC's adversary complaint by moving to dismiss or stay the proceeding based principally on the SEC's joinder of them to the Western District case. Before the court could decide whether to grant that request the parties "agreed to stay the adversary proceeding indefinitely to allow the[m] . . . to proceed with pending litigation in the District Court for the Western District of Wisconsin." ECF No. 13, at 2. Based on that agreement the court stayed this proceeding. It remained in stasis for over two years while the debtors pursued plan confirmation and the SEC litigated its securities law claims in the Western District.

At a May 12, 2022 hearing on plan confirmation, however, the debtors asked the

court to lift the stay after the court sustained their objections to the SEC's proofs of claim in part, allowing those claims in the amount of $0. The court granted the debtors' request to lift the stay imposed by party agreement but permitted the SEC to move to reimpose the stay for cause. See *In re Greenpoint Tactical Income Fund LLC*, Case No. 19-29613, ECF No. 1463, at 2.

A few days later the SEC moved to reimpose the stay until after entry of judgment in the Western District action. ECF No. 29. The defendants objected to that request and filed a second motion to dismiss the adversary proceeding. ECF Nos. 30 & 34.

Because the court never adjudicated the debtor-defendants' first motion to dismiss and the second motion to dismiss "appear[ed] substantively in tension with at least some aspects" of the earlier motion, the court ordered the defendants to clarify the bases on which they seek dismissal. ECF No. 32. The debtor-defendants responded by withdrawing all but part III of the first motion to dismiss, which contends that the SEC's securities law claims are not well pleaded. ECF No. 33. On June 2, 2022, the court ordered that it would not decide the adequacy of the SEC's pleading until "after the Western District adjudicates the SEC's claims against the debtor-defendants or that matter is otherwise finally resolved as between them." ECF No. 35. The court announced that it would adjudicate the defendants' second motion to dismiss, which principally contends that this court's recent orders moot this proceeding, and the SEC's motion to stay further adjudication to await the outcome of the Western District action. ECF No. 35.

II

A

The defendants move to dismiss this adversary proceeding pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction asserting that the proceeding is moot. "A case becomes moot, and the federal courts lose subject matter

jurisdiction, when a justiciable controversy ceases to exist between the parties. . . . Mootness commonly arises where a federal court becomes unable to award meaningful relief in the case." *Aslin v. Fin. Indus. Regul. Auth., Inc.*, 704 F.3d 475, 477 (7th Cir. 2013). Generally, a justiciable controversy ceases to exist when a change in circumstances leaves nothing for injunctive or declaratory relief to remedy (except when the dispute is "capable of repetition yet evasive of review," an exception inapplicable here) and no retrospective relief is requested. *Id.* at 488.

In contrast to the disgorgement and civil penalties relief the SEC seeks against the debtor-defendants in the pending Western District action, the SEC requests only a declaration of nondischargeability in this adversary proceeding. Its adversary complaint requests that "the Court order that [the SEC's] claims for disgorgement of ill-gotten gains, prejudgment interest, and civil penalties are not dischargeable pursuant to 11 U.S.C. §1141(d)(6)". ECF No. 1, at 6. Section 1141(d)(6) of the Bankruptcy Code provides, as relevant here, that "the confirmation of a plan does not discharge a debtor that is a corporation from any debt—(A) of a kind specified in paragraph (2)(A) or (2)(B) of section 523(a) that is owed to a domestic governmental unit".[1]

To understand the debtor-defendants' mootness argument requires discussion of the parties' litigation over allowance of the SEC's claims in the debtors' bankruptcy

---

[1] Section 523(a)(2)(A) and (B) except from discharge debts
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
        (B) use of a statement in writing—
            (i) that is materially false;
            (ii) respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
            (iv) that the debtor caused to be made or published with intent to deceive[.]

The debtor-defendants are "corporations" for purposes of §1141(d). See 11 U.S.C. §101(9). And the SEC is a domestic "governmental unit". See §101(27).

cases and confirmation of their plans of reorganization. The SEC timely filed proofs of claim on January 2, 2020, asserting unliquidated claims for securities laws violations in an "[a]mount to be determined". *In re Greenpoint Tactical Income Fund LLC*, No. 19-29613, Claim 34-1, at 2; *In re GP Rare Earth Trading Account LLC*, No. 19-29617, Claim 7-1, at 2. It later amended those proofs of claim to allege $7.35 million in disgorgement relief, plus prejudgment interest, and an additional $7.35 million in civil penalties. *In re Greenpoint Tactical Income Fund LLC*, No. 19-29613, Claim 34-2, at 2; *In re GP Rare Earth Trading Account LLC*, No. 19-29617, Claim 7-2, at 2.

The debtors objected to the SEC's amended proofs of claim, and the court adjudicated those objections on May 3. The SEC elected not to submit evidence in support of its claims for disgorgement relief and penalties, though it bore the ultimate burden to prove the amount of its claims. See 11 U.S.C. §502(b) and *In re Williams*, 622 B.R. 54, 57–58 (Bankr. N.D. Ill. 2020). Because the SEC presented no evidence or compelling legal justification for the asserted claim amount, the court allowed the SEC's claims—the debtors did not contest their possible liability under the securities laws—in the amount of $0, ruling that the SEC failed to meet its burden to show that it is likely to be awarded disgorgement or civil penalties against the debtor-defendants in any greater amount.[2]

---

[2] The SEC based the amount stated in its amended proof of claim for disgorgement on the amount of allegedly improper management fees and administrative expenses that it believed debtor Greenpoint Tactical Income Fund might *pay to* non-debtor parties. The SEC explained that the "amended proofs of claim reflect disgorgement comprised of charged but [as-yet] uncollected fees and expenses against GTIF and GPRE, both pre-petition and post-petition" that were asserted by Greenpoint's Managing Members against Greenpoint Tactical Income Fund in its bankruptcy case, as well as fees expected to be requested in the Fund's bankruptcy proceeding by H Informatics, LLC, an insider-related administrative service provider which had a contract with Greenpoint Tactical Income Fund under which the Fund paid H Informatics an annual fee that the SEC contends offends federal securities law. *In re Greenpoint Tactical Income Fund LLC*, No. 19-29613, ECF No. 1435, at 3–4. As to the fees and expenses Tactical Income Fund promised to pay in connection with plan confirmation, the court approved those payments as permissible administrative expenses incurred by the debtor in possession of the bankruptcy estates. As to the pre-petition fees and expenses of the Managing Members, the confirmed plan (which is itself based on a

After the court allowed the SEC's claims in the amount of $0, the court held an evidentiary confirmation hearing. Following that hearing, the court confirmed the debtors' amended chapter 11 plans. ECF No. 1470. The debtors' confirmed chapter 11 plans provide that the "SEC Claim will be allowed in the amount of $0.00 and paid on the Effective Date." ECF No. 1470, at 17, §3.3.6 & 81, §3.3.5.

---

mediated settlement among the Debtors, the Managing Members, and the Official Committee of Equity Security Holders of Greenpoint Tactical Income Fund LLC) reduces their $3.8 million unsecured claim to $1.4 million and converts it into "Non-Priority A Equity Interests". *In re Greenpoint Tactical Income Fund LLC,* Case No. 19-29613, ECF No. 1470, at 16. As for civil penalties, the SEC argued only that it is entitled to civil penalties equal to its claims for disgorgement because the District Court in the Western District action might award penalties equal to any disgorgement award.

In objecting to the claims, the debtors argued, among other things, that the disgorgement remedy could not properly be based on payments the debtors *made to* (rather than *received from*) others, since even the SEC characterized the remedy as the disgorgement of unlawful *gains*. The court held that this objection was sufficient to overcome the presumption that the amount the SEC stated in the proof of claim is correct, see Fed. R. Bankr. P. 3001(f), thus shifting the burden to the SEC to demonstrate that there is a factual and legal basis for the amount of its disgorgement and civil penalties claim. See *In re Pierport Dev. & Realty, Inc.*, 491 B.R. 544, 547 (Bankr. N.D. Ill. 2013) ("A party objecting to the proof of claim has the initial burden to produce some evidence or legal point to overcome this rebuttable presumption."); *In re Vanhook*, 426 B.R. 296, 299 (Bankr. N.D. Ill. 2010) ("Once the objector has produced some basis for calling into question [the] allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim in fact is allowable." (quoting *In re O'Malley*, 252 B.R. 451, 456 (Bankr. N.D. Ill. 1999))).

The SEC did not attempt to quantify the extent to which the debtors benefited from the alleged improper payments to other parties; indeed, the SEC did not show that the debtors derived any benefit from the alleged promised payments. The SEC offered no answer to the question how could the debtors have received ill-gotten gains from alleged payments that debtor Greenpoint Tactical Income Fund promised to pay to others but that it never paid? Given this, the court's subsequent approval of administrative expense payments the SEC sought to characterize as improper, and the fact that the non-insider investors in Greenpoint Tactical Income Fund overwhelming accepted confirmation of the debtors' plans of reorganization, which materially change Greenpoint Tactical Income Fund's operating structure to afford the non-insider investors greater oversight and control over the Fund, the court ruled that the SEC failed to establish that it would likely be awarded disgorgement relief or civil penalties against the debtors. ECF Nos. 1447 & 1453.

B

The debtor-defendants contend that this court's order allowing the SEC's bankruptcy claim in the amount of $0 and the debtors' payment of that claim as provided in the confirmed plans makes the SEC's request for a declaration of nondischargeability moot. The debtor-defendants argue that they have satisfied the SEC's claim as allowed by this court, and the preclusive effect of the claim-allowance order precludes the District Court from awarding disgorgement or civil penalties in a greater amount, stating:

> The District Court is free to adjudicate each of the alleged violations of the securities laws asserted in the SEC Civil Action and impose certain remedies, such as injunctive relief. The only thing the District Court cannot do, because of the doctrine of *res judicata*, is entertain the re-litigation of the SEC Claims for disgorgement (including penalties and interest) against the Debtors. This is a direct consequence of the adjudication of the SEC Claims under § 502(b).

ECF No. 37, at 4. Reasoning that the District Court is precluded from awarding disgorgement or civil penalties against them, the debtor-defendants conclude that they cannot be held to owe a debt to the SEC that this court might potentially declare nondischargeable.

This adversary proceeding would be moot if the claim-allowance order (or, for that matter, the order confirming the debtors' plans of reorganization or the effect of those plans) precludes the District Court from awarding disgorgement or civil penalties against the debtor-defendants, as they argue. And courts have held that, at least under some circumstances, a bankruptcy court's adjudication of a creditor's claim precludes the creditor from later collecting more than the amount allowed by the bankruptcy court, even when the Bankruptcy Code excepts that debt from discharge. See, e.g., *Hann v. Ed. Credit Mgmt. Corp. (In re Hann)*, 476 B.R. 344, 359 (B.A.P. 1st Cir. 2012), aff'd, 711 F.3d 235 (1st Cir. 2013). Courts have also held that confirmation of a plan has preclusive

effects on claims provided for by the plan. See *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502–03 (2015) ("Confirmation has preclusive effect, foreclosing relitigation of 'any issue actually litigated by the parties and any issue necessarily determined by the confirmation order.'") (quoting 8 Collier on Bankruptcy ¶ 1327.02[1][c], at 1327–6 (16th ed. 2014)); see also *Matter of Terrell*, No. 21-3059, 2022 WL 2688232, at *2 (7th Cir. July 12, 2022) (A confirmed plan "cannot be collaterally attacked".); *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000) ("[O]nce a bankruptcy plan is confirmed, its terms are not subject to collateral attack."); & 11 U.S.C. §1141(a).[3] As the SEC points out, however, other courts have held that neither a final bankruptcy court order allowing (or disallowing) claims for nondischargeable debts nor an order confirming a plan paying those debts precludes a creditor's later collection efforts. *State of Fl. Dept. of Rev. v. Diaz (In re Diaz)*, 647 F.3d 1073, 1092 (11th Cir. 2011); *United States v. Gurwitch (In re Gurwitch)*, 794 F.2d 584, 585 (11th Cir. 1986); *McConahey v. United States (In re McConahey)*, 192 B.R. 187, 191 (Bankr. S.D. Ill. 1996).

In addition to this apparent disagreement about the preclusive effect of claim adjudication and plan confirmation orders, there are other reasons that the debtor-defendants' preclusion argument may not prevail. For one thing the debtor-defendants' confirmed chapter 11 plans may be read to allow the SEC's pursuit of greater monetary

---

[3] Although the debtor-defendants invoke res judicata, they concede that the "District Court is free to adjudicate each of the alleged violations of the securities laws asserted in the SEC Civil Action and impose certain remedies, such as injunctive relief." ECF No. 37, at 4. If so, res judicata is inapplicable: "Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1978). The debtor-defendants' argument is that the SEC is bound by this court's determination of the amount of the disgorgement and civil penalty relief to which the SEC is entitled. ECF No. 37, at 4 ("The only thing the District Court cannot do, because of the doctrine of *res judicata* [sic], is entertain the re-litigation of the SEC Claims for disgorgement (including penalties and interest) against the Debtors."). This is the realm of collateral estoppel (or issue preclusion), rather than res judicata (or claim preclusion). "Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana*, 440 U.S. at 153.

relief in the District Court. Those plans state that they do not impede the SEC's Western District action against the debtor-defendants, which the plans call the "SEC Civil Action":

> Notwithstanding any provision herein to the contrary, **no provision of the Plan, or any order confirming the Plan**, (i) releases any Debtor or non-debtor person or entity from any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code, or (ii) enjoins, **limits,** impairs, or delays **the United States Securities and Exchange Commission (the "SEC") from pursuing any police or regulatory action against any Debtor or non-debtor person or entity in any forum, including the SEC Civil Action.**

ECF No. 1470, at 24, §6.11 & 84, §6.5 (emphasis added). What is more, the order confirming the debtors' plans of reorganization provides, "Confirmation of the debtors' plans does not affect or alter the SEC's rights to continue Adversary Proceeding No. 20-2005 to judgment on the SEC's claims that the debtors owe the SEC one or more debts that are non-dischargeable under 11 U.S.C. §1141(d)(6)." ECF No. 1470, at 2. While the scope of these provisions may be open to debate, this court understood the confirmation order to leave the SEC unrestrained to seek disgorgement and civil penalty relief in the Western District case. Whether that understanding of the confirmation order is alone sufficient to defeat the debtor-defendants' preclusion argument based on the distinct order allowing the SEC's claim is perhaps reasonably debatable.

A particularity of the Bankruptcy Code may also play a role in determining whether the claims-allowance order has the preclusive effect the debtor-defendants prescribe to it. Section 1109(a) of the Bankruptcy Code appears to bar the SEC from appealing the claims-allowance order. 11 U.S.C. §1109(a) ("The Securities and Exchange Commission may raise and may appear and be heard on any issue in a case under this chapter, but the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in the case."). And Seventh Circuit precedent instructs that unappealable final orders lack preclusive effect. See *Health Cost Controls of*

*Illinois v. Washington*, 187 F.3d 703, 708 (1999) ("[a]n *unappealable* ruling . . . is not res judicata"); see also *Warner/Elektra/Atl. Corp. v. Cnty. of DuPage*, 991 F.2d 1280, 1282 (7th Cir. 1993) ("an unappealable finding does not collaterally estop"). The venerable *Johnson Steel Street Rail Co. v. William Wharton, Jr., & Co.*, however, held that the principle of res judicata applied to the final order in that case, even though there was no right of appeal. 152 U.S. 252, 256–57 (1894). See also *United States v. Munsingwear, Inc.*, 340 U.S. 36, 38–39 (1950) ("The absence of a right to appeal was held in *Johnson Co. v. Wharton*, 152 U.S. 252, to make no difference, the determination in the first suit being binding in a second suit on a different claim.").

So, whether this court's order allowing the SEC's claim has any preclusive effect on the Western District case is a nice question. But it is a question better answered by the District Court. "After all," the Supreme Court has observed, "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.' . . . Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court". *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed.2002))). This principle bears additional weight here because the District Court occupies a higher tier in the hierarchical system of the federal courts.

Consequently, until the District Court rules that the SEC cannot recover monetary relief from the debtor-defendants, this adversary proceeding is not moot. Arguably, perhaps, the proceeding is not ripe—unless and until the District Court awards the SEC monetary relief there is no debt to which §1141(d) might apply to make nondischargeable. *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (internal quotation marks omitted)). But a lack of ripeness only *requires* dismissal when there is no case or controversy between the parties. The parties here are certainly involved in a live controversy. Under these

circumstances, the court may stay the proceeding until it is ripe for decision. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 113–18 (1976); *Jennings v. Auto Meter Products, Inc.*, 1:04-CV-1862WTLRLY, 2006 WL 4834467, at *8 (S.D. Ind. Mar. 28, 2006), aff'd, 495 F.3d 466 (7th Cir. 2007). This proceeding may become unnecessary if the District Court rules that the SEC is precluded from pursuing monetary relief or if that court does not award such relief against the debtor-defendants. As a result, staying this nondischargeability proceeding until the District Court completes its adjudication of the SEC's claims best serves the interests of the parties and the court in the efficient use of their resources.

III

For the reasons stated above, IT IS HEREBY ORDERED that the debtor-defendants' motion to dismiss for lack of jurisdiction is DENIED, and the SEC's motion to stay these proceedings is GRANTED, as follows: This adversary proceeding is stayed pending the entry of a judgment or other resolution of the SEC's claims for monetary relief against the debtor-defendants in *SEC v. Bluepoint Investment Counsel, LLC*, No. 19-CV-809 (W.D. Wis.).

IT IS FURTHER ORDERED that the parties must notify the court of such a judgment or order resolving the SEC's monetary claims against the debtor-defendants in *SEC v. Bluepoint Investment Counsel, LLC*, No. 19-CV-809 (W.D. Wis.), no later than 14 days after entry of that judgment or order.

#####